A00A1035. HEAD et al. v. DEKALB COUNTY et al.
(542 SE2d 176)

RUFFIN, Judge.

The Druid Hills Civic Association, Inc. and three individual homeowners sued DeKalb County, the DeKalb County Board of Commissioners, and Dr. John Rock, seeking a declaration as to the zoning status of certain property owned by Dr. Rock. The trial court granted summary judgment in favor of Dr. Rock, holding that the lawsuit was untimely and that the plaintiffs lacked standing to bring it. We granted the plaintiffs' application for discretionary appeal. Because the trial court erroneously treated this case as an appeal of a zoning decision, we reverse the trial court's ruling.

The ultimate issue in this case revolves around the meaning of Section 9 (a) (10) of the DeKalb County Organizational Act, which states that "no planning or zoning ordinance shall become law unless approved by the member of the Commission representing the district in which the subject property is located, or by one of the members of

the Commission elected from the county at large."[1] When this provision was originally enacted, the county commission consisted of five district members and two members elected from the county at large.[2] Subsequently, however, the act was amended to eliminate the two at-large seats, replacing them with "superdistrict" commissioners.[3] These superdistrict commissioners were not elected from the entire county; rather, the county was divided into two superdistricts, with one commissioner elected from each.[4] While the legislature eliminated the two at-large seats, however, it did not amend Section 9 (a) (10), which requires that any zoning ordinance be approved by the appropriate district commissioner or a commissioner "elected from the county at large."

On April 30, 1998, the Board of Commissioners held a public hearing to consider Dr. Rock's application for rezoning of his property from residential to office use. Four members of the Board voted in favor of the rezoning, while three members voted against rezoning. The district and superdistrict commissioners in whose respective districts the property was located both voted against the rezoning, while the other superdistrict commissioner voted in favor. The county attorney, Jonathan Weintraub, publicly announced his opinion that the rezoning did not become law because neither of the commissioners in whose district the property was located voted in favor of the rezoning. The vote was noted in the official minutes of the meeting, along with Weintraub's opinion that the rezoning was not approved. The minutes were reduced to writing and signed on April 30, 1998, the same day as the vote.

At some point after the meeting, after being contacted by Dr. Rock's attorney, Weintraub decided that his earlier opinion was erroneous and that the vote of the commissioners was in fact sufficient to approve the rezoning. He apparently concluded that the favorable vote of either superdistrict commissioner was sufficient to constitute the vote of a commissioner "elected from the county at large," even though neither of the superdistrict commissioners was actually elected from the county at large. On May 26, Weintraub sent a letter to Dr. Rock's attorney indicating that the rezoning was effective. Apparently in reliance on this letter, the county zoning map was changed to reflect that the property had been rezoned "O-I," an office classification. In response to a request from Rock, the county land use and planning coordinator provided a letter stating that the property was zoned O-I.

---

[1] Ga. L. 1981, pp. 4304, 4311.
[2] Id. at 4305.
[3] Ga. L. 1992, pp. 6566, 6572-6575, 6577-6578.
[4] Id. at 6572-6575, 6577.

Around November 1998, Rock filed an application for a Certificate of Appropriateness with the DeKalb County Historic Preservation Commission (HPC), seeking approval of certain renovations to the property. When the application came before the HPC on November 12, 1998, Rock produced the letter from the land use and zoning coordinator stating that the property was zoned O-I. The HPC ultimately issued a Certificate of Appropriateness on December 9, 1998.

On that same date, the plaintiffs sued DeKalb County, the Board of Commissioners, Dr. Rock, the HPC, and several other defendants, seeking a declaration that the Board of Commissioners did not vote to rezone the property and that the amendment of the zoning map was thus unauthorized. The plaintiffs also sought various forms of injunctive relief, including an order requiring the county to "rescind the unlawful amendment to the zoning map and ordinance," to enjoin the HPC from approving the Certificate of Appropriateness based on the improper zoning, and to prevent the issuance of any development permits based on the purported rezoning. On December 14, 1998, the trial court entered an order denying the plaintiffs' motion for a temporary restraining order, based in part on its preliminary conclusion that the property had been validly rezoned.

On December 22, 1998, the Board of Commissioners amended the minutes of the April 30 meeting to state that "it is unclear whether the [April 30] vote approved the zoning item or not." On January 9, 1999, the county informed Dr. Rock's attorney that, due to the uncertainty as to whether the rezoning had been approved, no permits or certificates of occupancy would be issued "[u]ntil that matter is cleared up."

On January 13, 1999, the plaintiffs filed an amended complaint to "recast their claims" in light of developments since the filing of the original complaint. In the amended complaint, which was apparently intended to supersede the original complaint, the plaintiffs did not seek injunctive relief, but simply sought "a declaratory judgment that the vote of the Board of Commissioners on April 30, 1998 resulted in the denial of the rezoning application and that the subsequent purported amendment of the official zoning map was unlawful, ultra vires and void." The plaintiffs dismissed all defendants except DeKalb County, the Board of Commissioners, and Dr. Rock.

Dr. Rock filed a motion to dismiss, which by agreement of the parties was treated as a motion for summary judgment.[5] The trial court granted the motion on two separate and independent grounds. First, it held that the lawsuit constituted an untimely appeal of a zoning decision. Second, it held that the plaintiffs lacked standing to

[5] The other defendants did not join in Dr. Rock's motion or file motions of their own.

appeal the zoning decision because they did not present evidence that their properties would suffer special damages as a result of the rezoning.

1. In holding that the plaintiffs' action was time-barred, the trial court characterized the action as "[a]n appeal of a rezoning decision." Because OCGA § 5-3-20 requires that appeals to superior court be filed "within 30 days of the date the judgment, order, or decision complained of was entered," and because the lawsuit was not filed within 30 days of the Board's vote on the rezoning application,[6] the court held that the lawsuit was time-barred.

The trial court's reasoning is faulty because it is based upon the erroneous premise that this lawsuit is an appeal of a zoning decision. The plaintiffs are not seeking to *reverse* the Board's action, but are seeking a declaration that such action resulted in the *denial* of the rezoning application.

Whether the Board's vote was sufficient to approve the rezoning in compliance with the Organizational Act turns on a legal issue: Was the affirmative vote of one of the two superdistrict commissioners sufficient to constitute the approval of a commissioner "elected from the county at large"? If the plaintiffs are correct in their interpretation of the Organizational Act, then the vote of the Board operated as a denial of the rezoning application, since it did not receive the votes necessary for passage.[7] If the application was denied, there would have been no grounds for the plaintiffs to appeal the decision in their favor.[8] To the contrary, it would have been incumbent upon Dr. Rock to file a timely appeal if he wished to challenge the Board's decision on the merits. Because the plaintiffs do not seek to change the Board's decision in any way, but simply seek a declaration as to the legal effect of the Board's action, this case cannot be considered an "appeal" of the zoning decision. Accordingly, the trial court erred in dismissing the action under OCGA § 5-3-20.

---

[6] See *Chadwick v. Gwinnett County*, 257 Ga. 59, 60 (1) (354 SE2d 420) (1987) (30-day period commences upon signing of initial document reducing zoning decision to writing). In this case, the minutes of the Board meeting were reduced to writing and signed on April 30, 1998, the same date as the vote.

[7] Although Dr. Rock argued below that Section 9 (a) (10) is unconstitutional to the extent that it prevents enactment of a zoning ordinance approved by a majority of the Board, the trial court did not rule on this issue. Accordingly, the constitutionality of the statute is not preserved for appellate review. See *Santana v. Ga. Power Co.*, 269 Ga. 127, 129 (6) (498 SE2d 521) (1998) ("[W]e will not rule on a constitutional question unless it clearly appears in the record that the trial court distinctly ruled on the point."). In any event, the constitutionality of the statute goes to the merits of the plaintiffs' contentions and does not change the nature of their action.

[8] See *Holland v. State Farm &c. Ins. Co.*, 244 Ga. App. 583, n. 4 (536 SE2d 270) (2000) ("Only a party who has been 'aggrieved' by a judgment has the right to appeal the judgment.").

2. The trial court's alternative basis for granting summary judgment to Dr. Rock — i.e., that the plaintiffs lacked standing to appeal the zoning decision because they failed to present evidence that they would sustain special damages — suffers from the same problem, in that it is based on the erroneous assumption that this is an appeal from a zoning decision.

It is true that, "[i]n order to challenge on the merits a decision of a governing authority to rezone, plaintiffs must show special damages under the substantial interest-aggrieved citizen test."[9] The term "special damages" refers to damages that are not common to all "similarly situated" property owners.[10] If the plaintiffs were appealing the merits of the Board's decision to rezone the property, this would be the proper test. As discussed above, however, the plaintiffs are not appealing the decision, but are seeking a declaration that the Board *did not* rezone the property. They are not seeking to change the Board's action, but simply seek a declaration as to the effect of such action. In essence, they are asking the court to declare what is the zoning status of Dr. Rock's property.

Under these circumstances, the proper question is not, "Do the plaintiffs have standing to appeal the merits of a rezoning decision?", but "Are the plaintiffs entitled to obtain a declaratory judgment as to the zoning status of Dr. Rock's property?" The answer depends upon whether the plaintiffs have standing under the Declaratory Judgment Act. Under that act, a court has the power to issue declaratory judgments in "cases of actual controversy" and in "any civil case in which it appears to the court that the ends of justice require that the declaration should be made."[11] "The object of the declaratory judgment is to permit determination of a controversy before obligations are repudiated or rights are violated."[12] In order to obtain a declaratory judgment, a plaintiff must show that he is "in a position of uncertainty or insecurity because of a dispute and of having to take some future action which is properly incident to [his] alleged right, and which future action without direction from the court might reasonably jeopardize [his] interest."[13]

It is apparent that the plaintiffs (as well as the Board) are uncertain as to the zoning status of Dr. Rock's property. Whether the plaintiffs are entitled to have a court tell them what that status is, however, depends upon whether they are "in need of judicial guidance to

---

[9] *City of Marietta v. Traton Corp.*, 253 Ga. 64, 65 (316 SE2d 461) (1984).

[10] See *DeKalb County v. Wapensky*, 253 Ga. 47, 48 (315 SE2d 873) (1984).

[11] OCGA § 9-4-2 (a), (b).

[12] (Punctuation omitted.) *Royal Lepage Real Estate Svcs. &c. v. Spalding Partners*, 192 Ga. App. 284 (1) (384 SE2d 424) (1989).

[13] (Punctuation omitted.) *Farm &c. Ins. Co. v. Skelton*, 235 Ga. App. 507, 508 (510 SE2d 76) (1998).

enable [them] to avoid incurring additional liability or jeopardizing [their] rights."[14] This, in turn, depends in part on (1) whether the plaintiffs have the ability to prevent Dr. Rock from developing the property in violation of its zoning status, whatever that may be,[15] and (2) whether this ability would be jeopardized by the court's failure to declare the property's zoning status. Because Dr. Rock did not raise this issue in his motion to dismiss and the trial court did not consider it in ruling on the motion, it would be improper for this Court to rule on the issue in the first instance.[16]

3. The plaintiffs contend that the trial court erred in holding that the property was legally rezoned. However, although a different judge, in denying the plaintiffs' motion for a temporary restraining order, preliminarily concluded that the property was legally rezoned, the trial court made no final ruling on this issue.[17] While we have doubts as to whether a superdistrict commissioner who is not elected from the entire county qualifies as a commissioner "elected from the county at large," we do not believe it is appropriate to resolve this issue in the absence of a final ruling by the trial court, particularly since the plaintiffs' standing to seek a declaratory judgment has not yet been adjudicated.

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 13, 2000 — 

*Susan M. Garrett*, for appellants.

*Jenkins & Nelson, Frank E. Jenkins III, Peter R. Olson, Dillard & Galloway, G. Douglas Dillard, Andrea C. Jones*, for appellees.

---

[14] *Royal Lepage*, supra at 285 (1).

[15] Whether a property owner may challenge the rezoning of a neighbor's property is a different question than whether such owner may prevent his neighbor from developing his property in violation of its existing zoning. See *Palmer v. Tomlinson*, 217 Ga. 399, 400 (6) (122 SE2d 578) (1961) (" 'A property owner residing in that portion of a municipality where a zoning ordinance is in force restricting the use of property in the zone to residential purposes, may properly apply for an injunction against the use of an existing structure within the restricted area, where such use is in violation of the zoning ordinance, without showing special damages.' "); *Graham v. Phinizy*, 204 Ga. 638, 645 (51 SE2d 451) (1949).

[16] See *Hodge v. SADA Enterprises*, 217 Ga. App. 688, 690 (1) (458 SE2d 876) (1995) ("The issues that must be rebutted on motion for summary judgment are those raised by the motion.").

[17] The order stated that *"[f]or the purpose of this decision*, it is found that . . . [t]he subject property was legally rezoned." The plaintiffs subsequently abandoned their claims for injunctive relief when they amended their complaint.