## A01A2170. ROCK v. HEAD et al.

### (562 SE2d 768)

SMITH, Presiding Judge.

Several plaintiffs sought judicial guidance concerning the effect of a vote by the DeKalb County Board of Commissioners with respect to defendant John Rock's application to change the zoning designation of his property from residential to office use. This appeal arises out of the trial court's order granting a declaratory judgment in favor of those plaintiffs. The facts of this case are carefully set forth in *Head v. DeKalb County*, 246 Ga. App. 756 (542 SE2d 176) (2000), and need not be repeated here. In that case, we concluded that the trial court erroneously dismissed the lawsuit on the ground that it was an untimely appeal of a zoning decision. Id. at 759 (1). We also found that the alternative basis for the dismissal, the trial court's conclusion that the plaintiffs had no standing to bring the action, was based on an incorrect legal assumption. Id. at 760. We did not decide the standing issue, however, because we concluded that the issue was not fully litigated in the trial court. Id. at 760-761 (2). The trial court subsequently entered another order concluding that the plaintiffs had standing to bring the lawsuit. The court also decided the issue of the effect of the board's decision, finding that the vote, although four in favor and three against rezoning, did not constitute approval of the application. Rock appeals from these rulings. We agree with the trial court that the plaintiffs had standing to bring the declaratory judgment action. In addition, under the language of the applicable Georgia law concerning approval of zoning applications in DeKalb County, we conclude that the trial court correctly found that the board's vote did not constitute an approval of Rock's application for rezoning. We therefore affirm.

1. We first address Rock's contention that the plaintiffs did not have standing to bring the declaratory judgment action. In *Head*, supra, we stated that the issue of whether plaintiffs had standing to obtain a declaratory judgment as to the zoning status of Rock's property depended on plaintiffs' status under the Declaratory Judgment Act. Id. at 760. Specifically, we found that whether they were entitled to have a court declare that status depended on whether they were

"in need of judicial guidance to enable them to avoid incurring additional liability or jeopardizing their rights." (Punctuation and footnote omitted.) Id. at 760-761. This issue depended partly on two questions: (1) whether plaintiffs have the ability to prevent Rock from developing the property in violation of its zoning designation; and (2) whether this ability would be jeopardized by the trial court's failure to declare the zoning designation. Id. at 761.

We find the trial court's reasoning apt on this issue, and we adopt it here:

> [T]he individual plaintiffs do possess standing to seek a declaratory judgment as to the zoning status of the Rock property. It is well settled that property owners may seek to prevent their neighbors from developing or using their property in violation of its existing zoning without showing special damages. See *Palmer v. Tomlinson*, 217 Ga. 399, 400 [(122 SE2d 578)] (1961). . . . Thus, if it is declared that Dr. Rock's property was not lawfully rezoned to OI and is therefore still in the RM-75 zoning districts, the plaintiffs, as neighboring property owners, would be entitled to seek injunctive relief to prevent him from using the property in violation of the zoning restrictions.[1]

2. Rock argues that the majority vote in favor of his rezoning application constituted approval of his request. As correctly stated by the trial court, the current zoning status of Rock's property depends on the outcome of the board's vote, after application of Section 9 (a) (10) of the DeKalb County Organizational Act. That section states that "no planning or zoning ordinance shall become law unless approved by the member of the Commission representing the district in which the subject property is located, or by one of the members of the Commission elected from the county at large." Ga. L. 1981, pp. 4304, 4311 (the 1981 Act). When this provision was enacted, the DeKalb County Commission consisted of five district members and two members elected from the county at large. Id. at 4305, § 2 (a). In 1992, however, the 1981 Act was amended to eliminate the election of the at-large commissioners and to replace them with two geographically distinct "commissioner districts" or "superdistricts." Ga. L. 1992, pp. 6567, 6572-6575 (the 1992 Act). The 1992 Act did not

---

[1] In *Head*, supra, citing *Palmer*, supra, we noted that whether a property owner can challenge the rezoning of a neighbor's property is a different issue than the question of whether the property owner can prevent his neighbor from developing his property in violation of existing zoning. Id. at 761, n. 15. The trial court's order takes this distinction into account, as it states that the issues plaintiffs seek to have decided involve their ability to prevent Rock from using his property in violation of existing zoning restrictions.

amend the language of section 9 (a) (10) of the 1981 Act concerning at-large commissioners, although the 1992 Act does recite that "[a]ll laws and parts of laws in conflict with this Act are repealed." Ga. L. 1992, pp. 6566, 6582, § 6.

As mentioned above, during the public hearing on Rock's application, four board members voted in favor of rezoning, and three voted against. *Head*, supra at 757. Rock's property is located in District 2 and Superdistrict 6. The commissioners from these districts voted against the rezoning, although the Superdistrict 7 commissioner voted in favor. Id. Applying section 9 (a) (10) of the 1981 Act to these facts, the trial court stated that

> the rezoning did not receive the affirmative vote of any commissioner in whose district the property is located. It is further undisputed that DeKalb County no longer has any commissioners who are "elected from the county at large," having replaced the at-large commissioners with two superdistrict commissioners. Therefore, the requirements of § 9 (a) (10) were not satisfied by the affirmative vote of . . . the superdistrict commissioner for District Seven, not an "at-large" commissioner.

Rock correctly points out that, when construing a statute, a court must "look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). And as stated in *City of Jesup v. Bennett*, 226 Ga. 606, 608 (2) (176 SE2d 81) (1970), we must give a statute the construction that "will effectuate the legislative intent and purpose." Rock also accurately states that we must construe a statute "to make all its parts harmonize and to give a sensible and intelligent effect to each part." *Houston v. Lowes of Savannah*, 235 Ga. 201, 203 (219 SE2d 115) (1975). Rock argues that the trial court's construction of the 1981 Act as it applies to the board's vote violates these principles, maintaining that the "interpretation finds no basis in any intention of the General Assembly" and "makes no effort to harmonize and reconcile the basic statute with the subsequent amendment." He further argues that the trial court's ruling creates a new requirement not found in either the 1981 Act or the 1992 Act — "the alternative of consent of the Super District Commissioner in whose district the property is located." Finally, Rock maintains that the ruling "fundamentally alters" the anti-majoritarian exception to majority rule found in section 9 (a) (10) to permit a two-person dissent to overrule a four- or five-person majority.

To cure the supposed ills created by the trial court's ruling, Rock urges us to conclude that the 1992 Act "simply substitutes Super Dis-

trict Commissioners for At Large Commissioners." Under this construction, the approval of either superdistrict commissioner would satisfy the 1981 Act. According to Rock, such an interpretation is consistent with the General Assembly's intent, avoids a repeal by implication, and avoids rendering any part of the 1981 Act meaningless.

We do not agree. "The construction of statutes must square with common sense and sound reasoning." (Citation and punctuation omitted.) *Tuten v. City of Brunswick*, 262 Ga. 399, 404 (7) (a) (i) (418 SE2d 367) (1992). The trial court's interpretation is logically sound. The 1992 Act eliminated at-large commissioners and divided the county into two geographically distinct superdistricts, and one commissioner must be chosen from each. Although the 1992 Act does not expressly amend section 9 (a) (10) of the 1981 Act concerning the vote of at-large commissioners, the 1992 Act does state that all "parts of laws" in conflict with the 1992 Act are repealed. Ga. L. 1992, p. 6582. Thus, construing the "at-large" language to have been repealed by the 1992 Act, no zoning changes can be approved without the vote of a commissioner in whose district the property is located. Neither the district commissioner nor the superdistrict commissioner from the district in which Rock's property is located voted in favor of the rezoning, and the application therefore was not approved. We agree with appellees that the trial court's interpretation of section 9 (a) (10) "upholds the validity of the statute and requires no inferences or leaps of faith."

In addition, we conclude that the underlying basis for the remainder of Rock's arguments, his contention that the trial court's interpretation violates the legislative intent underlying the 1981 Act, is incorrect. He argues that the legislative intent as revealed by the scheme of the 1981 Act is that the seven-member board govern itself by majority rule with the exception of the limited anti-majoritarian vote in the context of zoning amendments, as set out in section 9 (a) (10). He argues that under the prior law, a four-three vote could be defeated only in the narrow situation that occurred when the three-person minority was composed of the district commissioner and both at-large commissioners and that a simple substitution, "in form and substance," of superdistrict commissioners for at-large commissioners would continue to effectuate this intent. According to Rock, under this interpretation, majority rule would continue to govern, and the anti-majoritarian exception would remain limited to the requirement of three dissenting votes, consisting of the district commissioner and both superdistrict commissioners.

Rock correctly argues that zoning statutes must be strictly construed in favor of the property owner. See *Bo Fancy Productions v. Rabun County Bd. of Commrs.*, 267 Ga. 341, 342 (1) (a) (478 SE2d

373) (1996). But zoning ordinances also "must be given a reasonable construction. [Cit.]" Id. at 343 (1) (b). Unlike *Harrison v. Arogeti*, 228 Ga. 55, 57-58 (228 SE2d 55) (1971), cited by Rock, in which the applicable legislation clearly required a majority vote concerning certain zoning changes, the legislature in this case obviously intended to create circumstances in which a majority of votes in favor of a zoning change could be defeated. But we cannot conclude that this exception to "majority rule" is so narrowly limited, as proposed by Rock. An assumption that the legislature intended either superdistrict commissioner to be treated as the equivalent of an at-large commissioner is contradicted by the distinction created by the 1992 amendment, which deliberately eliminated at-large districts. Furthermore, under Rock's interpretation, a zoning change could be effected by a majority vote of commissioners, none of whom were chosen from the district in which the property lies. This result surely was not intended by the legislature. In fact, the previous law required at least one favorable vote from a commissioner who could have been said to represent the property owner, either a district commissioner from the property owner's district or from the county at large. The trial court's interpretation of section 9 (a) (10) is consistent with this result, as it requires a favorable vote either by a commissioner from the property owner's district or a commissioner from the owner's superdistrict. Because we find the trial court's construction of the board's vote in light of the 1992 Act and the 1981 Act to be more reasonable and consistent with the legislature's intent than that proposed by Rock, we find no basis for reversal.

We note Rock's argument that the trial court's construction of the relevant statute "offends due process, is illegal, unconstitutional, null, and void." But even assuming that Rock's due process arguments were raised in the trial court, these arguments were not directly addressed by the court below. And we cannot "rule on a constitutional question unless it clearly appears in the record that the trial court distinctly ruled on the point." (Citations, punctuation and footnote omitted.) *Haynes v. Wells*, 273 Ga. 106, 108 (3) (538 SE2d 430) (2000).

3. Rock argues that the trial court's order in this case is inconsistent with and nullifies an earlier order entered in a different lawsuit.

The present lawsuit was filed December 9, 1998. On December 22, the board passed a resolution stating that it did not know how to interpret its earlier vote concerning Rock's application for rezoning, and the board ordered that no permits issue until a judicial decision was made on the issue of whether the vote constituted approval of the application. *Head*, supra at 758. Rock then filed a separate action on January 1, 1999, for mandamus to seek issuance of permits. Plaintiffs were not parties to that suit. In its answer to this separate

action by Rock and the present suit, DeKalb County admitted that the rezoning was successful. The plaintiffs' present lawsuit was dismissed, and the trial court granted Rock's petition for mandamus and ordered the county to issue necessary permits for Rock's use of the property as an office. Meanwhile, the plaintiffs appealed from the dismissal of their action, and this court reversed. The trial court subsequently entered the declaratory judgment that is the subject of this appeal.

Rock argues that the order granting the declaratory judgment is inconsistent with the trial court's earlier order granting a writ of mandamus for issuance of necessary permits. But the plaintiffs in this action were not parties to the mandamus action and therefore had no forum in which to make arguments concerning the effect of the board's vote. For this reason, to the extent that Rock contends that the trial court's order has a preclusive effect on collateral estoppel grounds, he cannot prevail. The appellees were not parties to the litigation concerning the mandamus, and Rock has not shown that the contested issues "were actually litigated and decided and were necessary to the prior decision." (Citations and punctuation omitted.) *Cleland v. Gwinnett County*, 226 Ga. App. 636, 638 (487 SE2d 434) (1997). Rock argues that application of the principles discussed in *Cleland* could result in the issuance of additional, perhaps inconsistent, orders in other courts concerning the relationship between and application of the 1981 and 1992 Acts, and more broadly, with respect to other zoning concerns. But Rock's contentions are speculative at best. Moreover, Rock presumably had full knowledge that issues concerning the effect of the board's vote were pending on appeal when he filed the mandamus action. Consequently, to a great extent, his own actions precipitated issuance of the two orders that he now contends are inconsistent. We find no merit in Rock's arguments concerning this issue.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED MARCH 21, 2002 — ▮

*Dillard & Galloway, G. Douglas Dillard, Andrea C. Jones*, for appellant.

*Susan M. Garrett, Robert E. Price, Joan F. Roach*, for appellees.