A06A0937. HOLLBERG v. SPALDING COUNTY et al.
(637 SE2d 163)

MIKELL, Judge.

We granted the application of Benjamin Sinclair Hollberg ("Sinclair")[1] for discretionary appeal of the order granting summary judgment to Spalding County, Spalding County Board of Commissioners ("Board"), and Wilma A. Hollberg ("Wilma"), to review the trial court's ruling that Sinclair lacks standing to challenge the approval of a special exception to a local zoning ordinance permitting a residential development on Wilma's adjoining property. We affirm, but clarify that a devisee of real property may have standing to challenge a zoning decision even though his title is inchoate.

Wilma, who is married to Sinclair's brother, Douglas, owns 142.98 acres of land contiguous to property currently owned in fee simple by Sinclair. Sinclair's property, which includes a 20-acre tract and a 92-acre tract, is known as "Double Cabins Plantation" and has been in the Hollberg family since 1839. The home place was built in 1842 and is listed in the National Register of Historic Places. In 1994, Sinclair's mother, Emma Walker Hollberg, began operating a bed and breakfast in the main house on the smaller tract. Guests of the bed and breakfast observed the wildlife and hunted deer and turkey on the plantation.

Emma died on September 30, 2003, having devised a life estate in the 20-acre tract to Sinclair with the remainder to Sinclair's son. Emma devised the 92-acre tract jointly to Sinclair and a second brother, Jerry Hollberg. Sinclair and Jerry were named co-executors of Emma's estate, but disputes arose, and an administrator was appointed to settle the estate. The administrator assented to the devise of the smaller tract in April 2005, and Sinclair's son quit-claimed his interest in the property to Sinclair. Sinclair purchased Jerry's interest in the larger tract, and the administrator deeded the tract to Sinclair in March 2005. Sinclair resides with his family in the main house.

Wilma purchased her property in 1998, and it is unrelated to the estate. On February 3, 2004, Wilma entered into an agreement to sell her acreage to developer/defendant Next Generation Properties, LLC, with the sale being contingent upon rezoning of the parcel from AR-1 (agricultural and residential) to R-4 (single-family residential).[2] Next Generation, acting as Wilma's agent, then filed two applications with the County: an application to rezone the property to

---

[1] All Hollberg parties are referred to by their first or middle names to avoid confusion.

[2] AR-1 requires three-acre lots outside of a "conservation" subdivision but permits two-acre lots within such subdivision. R-4 zoning requires two-acre lots, unless a special exception permitting one-acre lots is approved.

R-4 and an application for a special exception to allow one-acre lots in the R-4 district. The county planning commission held a hearing on March 30, 2004. Sinclair was present and voiced objections, citing adverse environmental and quality of living consequences. The planning commission recommended approval of the rezoning application, with certain conditions. The Board then held a hearing on April 22, 2004, at which Sinclair again objected, and unanimously approved rezoning Wilma's property, but to classification R-2 with conditions, instead of R-4 as requested.[3] Next Generation had proposed developing a residential subdivision on the 143 acres with 95 minimum one-acre lots, with the remainder dedicated to green space and buffers, but no action was taken on the special exception. The County adopted a resolution amending the local zoning ordinance and official county zoning map to reflect the change from R-4 to R-2. Sinclair did not appeal the County's action.

The hearing on the application for the special exception was held before the Board on September 23, 2004. Noting that the property already had been rezoned to R-2 with conditions, the Board approved the application on a 3-2 vote, with several conditions, including minimal disturbance of the land, with no clear-cutting permitted.

On October 25, 2004, Sinclair filed in superior court a petition for a writ of certiorari or, in the alternative, a complaint for declaratory judgment, naming the County and Next Generation as defendants and the Board as respondent. The petition alleged four counts. In Count 1, Sinclair sought review of the Board's grant of the special exception, alleging, inter alia, that it was void because it was based upon a rezoning decision issued pursuant to the local ordinance governing amendments to the official zoning map,[4] which, Sinclair argued, was void because it contained no standards governing the exercise of zoning power, as required by OCGA § 36-66-5 (b). The remaining counts requested that the ordinance, the Board's April 22, 2004, approval of the rezoning request, and the Board's grant of the special exception be declared null and void. The County and the Board filed an answer. The trial court granted Wilma's motion to intervene as a defendant, and she filed an answer. Next Generation did not file an answer, and the court granted default judgment against it.

Following discovery, the remaining parties filed cross-motions for summary judgment. At the hearing held on the motions, Sinclair

---

[3] Excerpts of R-2 zoning requirements that have been included in the record are incomplete; those pertaining to lot size are omitted. However, it appears from testimony at the hearing on the special exception before the county board of zoning appeals that lots in the R-2 district must be a minimum of two acres.

[4] Section 414 of the County Unified Development Ordinance ("UDO").

conceded that he had not timely appealed the Board's April 22, 2004, rezoning decision pursuant to Section 418 of the UDO, which states: "If the [Board] takes an action which the developer or other aggrieved party believes to be contrary to law, that action may be appealed to the Spalding County Superior Court. Such an appeal must be filed within thirty (30) days of the date on which the action of the [Board] was taken." The parties addressed the issue of whether Sinclair had standing to challenge the special exception pursuant to the substantial interest-aggrieved citizen test applicable to neighboring property owners: "[T]here [are] two steps to standing: First, . . . a person claiming to be aggrieved must have a substantial interest in the zoning decision, and second, . . . this interest [must] be in danger of suffering some special damage or injury not common to all property owners similarly situated."[5]

Based on the evidence tendered in support of each motion for summary judgment and the argument of counsel at the hearing, the trial court granted the motions filed by the County and the Board and by Wilma (hereinafter, "appellees") and denied Sinclair's motion. Specifically, the court found that Sinclair had appealed from the Board's decision to approve the special exception; that Sinclair had not demonstrated compliance with the substantial interest-aggrieved citizen test, so that he lacked standing to challenge the Board's approval of the special exception; and that Sinclair had not shown that the ordinance and procedures used by the County to exercise its zoning power violated the Zoning Procedures Law (ZPL), OCGA § 36-66-1 et seq. This discretionary appeal followed.

1. (a) *Declaratory judgment.* As noted above, it is undisputed that Sinclair failed to appeal the Board's rezoning of Wilma's property from AR-1 to R-2 within 30 days of that action, as required by Section 418 of the UDO. Sinclair nevertheless argues that he has standing to seek a declaratory judgment to challenge the rezoning. Pretermitting whether he has waived this argument by failing to obtain a ruling thereon,[6] this contention is meritless.

"In order to obtain a declaratory judgment, a plaintiff must show that he is in a position of uncertainty or insecurity because of a dispute and of having to take some future action which is properly

---

[5] (Citation omitted.) *DeKalb County v. Wapensky,* 253 Ga. 47, 48 (1) (315 SE2d 873) (1984); see also *Brand v. Wilson,* 252 Ga. 416, 417 (1) (314 SE2d 192) (1984).

[6] The trial court ruled from the bench that it was denying the petition for declaratory judgment because the County had not violated the ZPL. The court did not rule upon the precise argument raised herein. See *Blakely & Son, Ltd. v. Humphreys,* 148 Ga. App. 281, 283 (1) (250 SE2d 826) (1978) ("Where there is no final ruling upon an issue by the trial court, there is nothing for the appellate court to pass upon, for this court is a court for the correction of errors made in the trial court") (citation omitted).

incident to his alleged right, and which future action without direction from the court might reasonably jeopardize his interest."[7] Sinclair argues that he is in a position of uncertainty as to whether the zoning of Wilma's property is AR-1 or R-2. But there is no uncertainty about the zoning classification. The Board rezoned the property by a unanimous vote on April 22, 2004, and the decision was not timely appealed by any party. Sinclair may not avoid the requirement of filing a timely appeal by seeking a declaration of rights that already have accrued.

Moreover, *Head v. DeKalb County*,[8] upon which Sinclair relies, does not support his position. In that case, the process by which a rezoning was accomplished was called into question due to the composition of the DeKalb County Board of Commissioners ("BOC"), with the county attorney ultimately declaring that the BOC had approved the rezoning at issue.[9] Adjoining property owners filed suit, seeking a declaratory judgment that the effect of the BOC's vote had been to deny, rather than approve, the rezoning.[10] The trial court granted summary judgment to the owner of the rezoned property, holding that the suit was an appeal of a rezoning action and, as such, was time-barred because it was filed more than 30 days after the decision.[11] This Court reversed, holding that the suit was a proper declaratory judgment action because the plaintiffs were not appealing the BOC's decision or seeking to reverse it. Rather, they were seeking a declaration that the BOC did not rezone the property.[12] In the instant case, however, Sinclair is dissatisfied with the Board's decision to rezone the adjacent property. It was incumbent upon him to file a timely appeal if he wished to challenge the Board's decision on the merits.[13] Having failed to do so, Sinclair is precluded from attacking the April 22, 2004, decision.

(b) *Compliance with the ZPL.* In his second enumerated error, Sinclair argues that the Board's April 22, 2004, rezoning decision is invalid because Section 414 of the UDO fails to comply with the ZPL. This argument fails because it is time barred, as any challenge to the rezoning was required to be raised within 30 days. Furthermore, the trial court erred to the extent it considered this argument. Finally, we

---

[7] (Punctuation and footnote omitted.) *Head v. DeKalb County*, 246 Ga. App. 756, 760 (2) (542 SE2d 176) (2000).

[8] Id.

[9] Id. at 757.

[10] Id. at 758.

[11] Id. at 759 (1).

[12] Id.

[13] See Section 418 of the UDO; OCGA § 5-3-20; see also *Jackson v. Spalding County*, 265 Ga. 792, 793 (1), n. 3 (462 SE2d 361) (1995) (zoning ordinance may provide method of review, whether by appeal or by writ of certiorari).

are not persuaded by Sinclair's argument that, under the circumstances presented in this case, Georgia law permits a party to challenge the rezoning of a tract of land "long after" the action has taken place. The cases he cites for this proposition are inapposite because they concern circumstances which are not alleged to have occurred in the instant case and, further, because they do not address the timeliness of the petitioner's complaint in superior court.[14] Accordingly, we consider only those arguments that concern the grant of the special exception.

2. Sinclair argues that the trial court erred in determining that he lacked standing to challenge the Board's approval of the special exception pursuant to the substantial interest-aggrieved citizen test. The trial court's determination regarding standing will not be reversed unless it is clearly erroneous,[15] although any question of law inherent therein is subject to de novo review.[16]

(a) *Substantial interest.* The first prong of the standing test requires that the neighbor have a "substantial interest" in the zoning decision.[17] At the motions hearing, the appellees argued that Sinclair did not have standing to challenge the special exception because he did not hold title to the plantation at the time the exception was granted to Wilma. Sinclair argued that he had a "substantial interest" by virtue of being a devisee in his mother's will.[18] The trial court seemingly agreed with Sinclair on this prong of the test, although that ruling is not reflected in the court's order.

Whether a devisee of real property has a substantial interest in a zoning decision so as to satisfy the first prong of the test is a matter of first impression in this state. We look to probate rules for guidance. "In the testamentary disposition of realty, upon the death of the owner of realty, the devisees have an inchoate title in the realty which

---

[14] *Tilley Properties v. Bartow County*, 261 Ga. 153, 154 (1) (401 SE2d 527) (1991) (zoning ordinance was void because county failed to comply with ZPL requirements of public notice and hearing); *City of Flovilla v. McElheney*, 246 Ga. 552 (1) (272 SE2d 287) (1980) (zoning ordinance was void because zoning map was not properly certified); *Waldrop v. Stratton & McLendon*, 230 Ga. 709, 710 (1) (198 SE2d 883) (1973) (zoning ordinance was void because it was insufficiently recorded); *Hulsey v. Smith*, 224 Ga. 783 (164 SE2d 782) (1968) (zoning regulation was unenforceable as it was never legally adopted); *City of Waycross v. Boatright*, 104 Ga. App. 685, 686 (1) (122 SE2d 475) (1961) (valid declaratory judgment action to determine whether zoning restrictions existed).

[15] *City of Marietta v. Traton Corp.*, 253 Ga. 64, 66 (1) (316 SE2d 461) (1984); *Lindsey Creek Area Civic Assn. v. Consolidated Govt. of Columbus*, 249 Ga. 488, 490 (292 SE2d 61) (1982).

[16] See generally *Northside Corp. v. City of Atlanta*, 275 Ga. App. 30, 31 (1) (619 SE2d 691) (2005) (interpretation of a zoning ordinance is a matter of law).

[17] *Wapensky*, supra; *Brand*, supra.

[18] As for relevant dates, Sinclair's mother, Emma, died in 2003, the Board approved the special exception on September 23, 2004, Sinclair filed suit on October 25, 2004, and Emma's estate settled in March or April 2005.

is perfected when the executor assents to the devise."[19] Such assent "relates back to the date of death of the testator."[20] "[I]nchoate title in real estate can be voluntarily conveyed and can be the subject of a fraudulent conveyance. It is also an assignable property right. Even though the right is inchoate rather than vested, it is a legal right that will be protected."[21] Thus here, when the administrator of the estate assented to the devise of the 20-acre tract, a life estate vested in Sinclair, which related back to September 30, 2003, the date of Emma's death. Until that time, his title was inchoate, and he held inchoate title to the larger tract as well. Given the legally protected status of inchoate title to real property, we hold that such title is sufficient to give him a "substantial interest" in the grant of the special exception to Wilma.[22]

Appellees contend that the administrator of Emma's estate, as legal title holder to the devised property at the time suit was filed, was the proper party to bring the action.[23] Appellees, however, have waived this contention because they did not move to dismiss the action on this ground, and "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest."[24]

(b) *Special damages.* To satisfy the second prong of the standing test, the adjoining property owner must show "that his property will suffer special damage as a result of the decision complained of rather than merely some damage which is common to all property owners similarly situated."[25] " '[S]imilarly situated' . . . refer[s] to persons in the general community who may merely suffer inconvenience and exclude[s] those persons who stand to suffer damage or injury to their property which derogates from their reasonable use and enjoyment of it."[26] Thus, in *Brand v. Wilson*,[27] expert testimony that an adjoining landowner would suffer a 15 to 20 percent decrease in the value of his

---

[19] (Citations and punctuation omitted.) *Williams v. Williams*, 236 Ga. 133, 135 (223 SE2d 109) (1976).

[20] (Citation omitted.) *Allan v. Allan*, 236 Ga. 199, 201 (223 SE2d 445) (1976).

[21] (Citations omitted.) Id.

[22] See generally *Searcy v. Searcy*, 280 Ga. 311, 312 (1) (627 SE2d 572) (2006) (devisee's interest in real property is subject to alimony); *Moore v. Moore*, 255 Ga. 308, 309 (1) (336 SE2d 804) (1985) (devisee's interest in real property is "ownership" for purposes of the Long Arm Statute).

[23] See generally OCGA § 53-8-15 (a).

[24] OCGA § 9-11-17 (a).

[25] (Citation and punctuation omitted.) *Brand,* supra.

[26] (Citation omitted.) *Wapensky,* supra.

[27] Supra.

property was deemed "sufficient evidence upon which a trial court might find substantial damage to a substantial interest."[28] Testimony that the value of neighboring properties would be reduced, in addition to evidence of additional damages in the form of noise, odor, and visual intrusions on peace and privacy, were held to meet the special damage requirement in *DeKalb County v. Wapensky*.[29] But "[m]ere allegations of speculative or contingent injuries" will not establish standing.[30] At least one case has held that a decrease in value of property is not required as a prerequisite for standing.[31]

As evidence of special damage, Sinclair filed an affidavit stating that three-quarters of the guests of the bed and breakfast visited the facility for the purpose of enjoying the wildlife, and about half that number hunted deer or turkey; that Wilma's property is heavily wooded, and the proposed development approved by the special exception will significantly reduce the wildlife population on Sinclair's plantation property; that the diminished wildlife will reduce the profitability of the bed and breakfast business; and that the development will be visually offensive to his use and enjoyment of the property. A frequent guest of the bed and breakfast submitted an affidavit stating that he is familiar with the proposed development for Wilma's property and that the development will significantly diminish the deer and turkey available for hunting on the plantation property. Similarly, in answers to interrogatories, Sinclair stated that he would suffer special damages as a result of loss of wildlife habitat and reduction in wildlife population.

At the motions hearing, however, Sinclair's counsel represented that Sinclair no longer derived income from the bed and breakfast or from persons desiring to hunt on the plantation, and that his property values had actually increased since the grant of the special exception. Admissions of fact, "made by a party's counsel during a hearing or trial[,] are regarded as admissions in judicio and are binding on the

---

[28] Id. See also *Moore v. Maloney*, 253 Ga. 504, 506 (1) (321 SE2d 335) (1984) (appellants produced evidence that their property value would decline if seven townhouses were erected on the adjacent lot). Compare *Macon-Bibb County &c. v. Vineville Neighborhood Assn.*, 218 Ga. App. 668, 670 (1) (462 SE2d 764) (1995) (homeowners' general concern regarding increased noise, traffic, crime, and lower property values was not sufficient evidence of "substantial damage to a substantial interest"); *Lindsey Creek*, supra at 492 (reduction in value of neighbors' property held insufficient, without more, to confer standing).

[29] Supra at 49 (1).

[30] (Citation omitted.) *City of Columbus v. Diaz-Verson*, 258 Ga. 698, 699 (2) (373 SE2d 208) (1988) (plaintiffs did not allege that the rezoning would result in a diminution in the value of their property, but merely speculated that flood damage would occur).

[31] *AT&T Wireless PCS v. Leafmore Forest Condo. Assn.*, 235 Ga. App. 319, 321 (1) (509 SE2d 374) (1998).

party."[32] Furthermore, the evidence of record demonstrates such increase in value. Sinclair's property was appraised on September 15, 2004, for $7,000 per acre. The special exception was granted eight days later. On March 26, 2005, immediately after receiving title to the estate property, Sinclair entered into an agreement with a real estate broker to sell 24 acres for $570,000, or $23,750 per acre, although the property was marketed for $22,000 per acre. The broker deposed that this price was reasonable. Given the expert testimony that the value of the land had appreciated considerably since the date the special exception was granted, we find no error in the trial court's ruling that Sinclair failed to meet his burden of proving standing to challenge the special exception.

3. The County's motion to strike Sinclair's reply to the County's brief is denied.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED OCTOBER 5, 2006.

*Gilbert M. Taylor,* for appellant.
*Galloway & Lyndall, Newton M. Galloway, John C. Torri,* for appellees.

---

[32] (Citations and footnotes omitted.) *In re McCool,* 267 Ga. App. 445, 448 (600 SE2d 403) (2004).