**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 31, 2017**

# In the Court of Appeals of Georgia

A17A0965. JESTER, et al. v. RED ALLIGATOR, LLC.

BRANCH, Judge.

DeKalb County and its Board of Commissioners ("the Commission")[1] appeal from an order of the DeKalb County Superior Court entering judgment against them and in favor of Red Alligator, LLC, on Red Alligator's complaint for injunctive and declaratory relief. The judgment prevents the Commission from rescinding or otherwise declaring invalid its prior approval of both a rezoning application and an application for a Special Land Use Permit ("SLUP") filed by Red Alligator. The County asserts that Red Alligator's voluntary withdrawal of both the rezoning and the

---

[1] DeKalb County and the Commission are referred to collectively as "the County." The commissioners named in their official capacities as defendants are Nancy Jester, Jeff Rader, Larry Johnson, Sharon Barnes Sutton, Lee May, Kathie Gannon, and Stan Watson.

SLUP applications before the Commission had the opportunity to take a "valid" vote on them rendered the current action moot, and that the trial court erred when it found to the contrary. Additionally, the County argues that the trial court erred in granting Red Alligator's request for a declaratory judgment that the Commission's approval of both the rezoning and SLUP applications was valid. Finally, the County contends that because the SLUP allows Red Alligator to have more Class B gaming machines on its property than are allowed under state law, the trial court erred by enjoining the Commission from taking any additional action with respect to the SLUP. For reasons explained more fully below, we find that this action was not mooted by Red Alligator's withdrawal of the zoning applications at issue before the Commission had the opportunity to vote on them a second time. We further find, however, that neither the rezoning petition nor the SLUP application was properly approved and that they were therefore void ab initio. For that reason, we reverse the judgment of the trial court and remand for entry of judgment in favor of the County.

The relevant facts are undisputed and this appeal presents only a question of law. Accordingly, our review of "both the record and the decision of the court below" is de novo. *Johnson v. Allied Recycling*, 323 Ga. App. 427, 427 (746 SE2d 728) (2013) (citation and punctuation omitted).

2

*The Ward Courtesy Rule.*

The current form of DeKalb County government was established by an act passed by the General Assembly in 1981 and subsequently approved by the electorate of DeKalb County in 1982 (the "Organizational Act"). See 1981 Ga. L., p. 4304-4331. Under the Organizational Act, the county's governing authority consists of a seven-member Board of Commissioners and a Chief Executive Officer, with all commissioners and the CEO being elected. Id. at p. 4305, 4307-4308, § 1 (Organizational Act at §§ 1(b), 2 (c), 5 (a)). As originally enacted, the Organizational Act divided the county into five geographic Commission districts with residents of each district electing a Commission member to represent them. Id. at p. 4305-4307 (Organizational Act at §§ 2(b), (c)). The remaining two commissioners were elected at large. Id.

Section 9 (a) (10) of the Organizational Act vests the Commission with the power and authority

> [t]o regulate land use by the adoption of a comprehensive development plan and by the adoption of other planning and zoning ordinances which relate reasonably to the public health, safety, morality [,] and general welfare of the county and its citizens; *provided, however, no planning or zoning ordinance shall become law unless approved by the member of the Commission representing the district in which the subject*

3

> *property is located, or by one of the members of the Commission elected*
> *from the county at large.*

Id. at p. 4311, §1 (Organizational Act at §9 (a) (10)) (emphasis supplied). The above-emphasized language is known as the "Ward Courtesy Rule."

In 1992, the Organizational Act was amended by an act passed by the General Assembly and approved by the DeKalb County voters (the "1992 Amendment"). 92 Ga. L., p. 6566-6583. Under the 1992 Amendment, the county is divided into five geographic Commission districts and also into two geographic Commission "super districts."[2] Id. at p. 6567, §1. Commissioners elected from the super districts replaced the two at-large commissioners provided for in the original Organizational Act. Id.

Although the 1992 Amendment eliminated at-large commissioners, it did not amend the Ward Courtesy Rule. The 1992 Amendment did provide, however, that "[a]ll laws and parts of laws in conflict with this Act are repealed." Id. at p. 6882, §6. Relying on this language, we have previously construed the reference to at-large commissioners found in the Ward Courtesy Rule as having been repealed by the 1992 Amendment. *Rock v. Head*, 254 Ga. App. 382, 385 (2) (562 SE2d 768) (2002). *Rock*

---

[2] Each of the five Commission districts is included, in whole or in part, in one of the two super districts. Id. at 6572-6575, §1.

4

held that with the "at-large" language repealed, "no zoning changes can be approved without the vote of a commissioner in whose district the property is located." Id. Accordingly, to become law, a zoning ordinance must receive an affirmative vote from either the district or super district commissioner in whose district the property is located. Id.

*The Zoning Applications at Issue.*

Red Alligator is a limited liability company incorporated under the Tunica-Biloxi Indian Tribe that owns a 10.15 acre parcel of real property in DeKalb County. This property is located in Commission district 5 and in Commission super district 7. Red Alligator is seeking to develop and operate a "mixed-use, luxury resort" on the property that would include a motel, restaurants, retail shops, and an indoor "amusement area" for adults. This amusement area would include, among other things, a number of Class B coin-operated amusement machines.[3]

---

[3] Georgia law defines a Class B machine as "a bona fide coin operated amusement machine that allows a successful player to accrue points on the machine and carry over points won on one play to a subsequent play or plays . . . and [r]ewards a successful player in compliance with the provisions of paragraphs (1) and (2) of subsection (d) of Code Section 16-12-35." OCGA § 50-27-70 (b) (4) (A). Thus, Class B machines must reward a player "exclusively with: (A) Free replays; (B) Merchandise limited to noncash merchandise, prizes, toys, gift certificates, or novelties, each of which has a wholesale value of not more than $5.00 received for a single play of the game or device; (C) Points, tokens, vouchers, tickets, or other

5

In July 2014, Red Alligator filed two separate applications with the DeKalb County Planning Department. One of these was an application for a SLUP to allow Red Alligator to operate a late-night establishment[4] on the property, while the second application sought to have the property re-zoned from Office-Commercial-Residential ("OCR") to C-1 (local commercial). The Commission voted on both of these applications at its December 16, 2014 meeting. At that time, Lee May was the commissioner representing district 5 and Stan Watson was the commissioner representing super district 7. Also at that time, however, May had been appointed to serve as the interim County CEO, and he therefore could not participate as a member of the Commission. As a result of these circumstances, May did not vote on the two

evidence of winnings which may be exchanged for [any of the foregoing] rewards." OCGA § 16-12-35 (d) (1). Additionally, players of Class B machines "may accumulate winnings for the[ir] successful play . . . through tokens, vouchers, points, or tickets [and] . . . redeem accumulated tokens, vouchers, or tickets for noncash merchandise, prizes, toys, gift certificates, or novelties so long as the amount of tokens, vouchers, or tickets received does not exceed $5.00 for a single play." OCGA § 16-12-35 (d) (2).

[4] The Zoning Ordinance of DeKalb County (which serves as the county's comprehensive zoning ordinance) defines a "late-night establishment" as "[a]ny establishment licensed to dispense alcoholic beverages for consumption on the premises where such establishment is open for patrons beyond 12:30 a. m." DeKalb County Code of Ordinances, ch. 27, art. 9, § 9.1.3.

applications. Additionally, Watson recused himself from both votes.[5] The remaining five members of the Commission voted unanimously to approve both the rezoning petition and the SLUP application. The SLUP application was approved with conditions recommended by the county's zoning staff, with one of those conditions being "[t]he expansion of indoor amusement beyond 9 machines to be limited to no more than 425 virtual reality, coin operated amusement machines and/or simulators."

*The Current Lawsuit.*

In February 2015, the Commission voted to acknowledge that its approvals of the rezoning petition and the SLUP application were invalid, as neither application had received an affirmative vote from the commissioner for either district 5 or super district 7. As a result of this decision, Red Alligator[6] filed the current lawsuit in March 2015, seeking a declaratory judgment that neither the rezoning nor the SLUP applications was subject to the Ward Courtesy Rule and that the approval of both was

---

[5] Both the trial court's order and the parties' briefs assert that Watson abstained from the vote. The minutes of the meeting in question, however, show that Watson recused himself from the vote.

[6] APD Solutions, LLC, an entity that has been described as a consultant to Red Alligator's project, was also a named plaintiff in that lawsuit. The trial court's order, however, grants judgment only in favor of Red Alligator, as the property owner, and therefore APD Solutions is not a party to this appeal.

therefore valid; an injunction barring the Commission from rescinding or otherwise invalidating its approval of the rezoning and the SLUP applications; and an award of monetary damages resulting from the Commission's interference with vested property rights Red Alligator allegedly obtained upon approval of both applications.

Despite the filing of the lawsuit, the Commission continued to view both the rezoning and the SLUP applications as pending (rather than as approved), and placed the SLUP application on a May 2015 agenda for a vote. Prior to that meeting, however, Red Alligator requested the withdrawal of both applications, and the Commission granted that request and therefore did not vote on the application for a second time.

In April 2016, the County moved for summary judgment, arguing that because Red Alligator had withdrawn both applications before a valid vote could be held the issues in its lawsuit had been rendered moot. The County further argued that the votes on both the rezoning petition and the SLUP application were invalid because they failed to comply with the Ward Courtesy Rule. After a hearing on the County's motion, the trial court entered an order denying the same. Red Alligator then submitted a "trial brief" in which it asked the trial court to enter judgment in its favor on all of its claims based on the evidence of record, the arguments heard at the

8

summary judgment hearing, and the findings of fact and conclusions of law contained in the trial court's order denying summary judgment to the County. The trial court thereafter entered an order of judgment in favor of Red Alligator. The order found that Red Alligator's withdrawal of the rezoning and SLUP applications prior to the May 2015 vote did not render its lawsuit moot and granted Red Alligator a declaratory judgment that the original approval of both applications was valid, as neither was subject to the Ward Courtesy Rule; an injunction barring the Commission from rescinding or otherwise invalidating its prior approval of the applications; and an award of monetary damages in an amount to be determined.

Following entry of judgment in favor of Red Alligator, the County filed an application for discretionary appeal, which we granted. This appeal followed.

1. We first address the County's claim that Red Alligator's withdrawal of the rezoning and SLUP applications before the Commission had an opportunity to vote on them a second time rendered this action moot.

"A case is moot when its resolution would amount to the determination of an abstract question not arising upon existing facts or rights." *Scarbrough Group v. Worley*, 290 Ga. 234, 236 (719 SE2d 430) (2011) (citation and punctuation omitted). Thus, a case is mooted where a plaintiff receives the relief it seeks, where the relief

9

sought is no longer available, or where a decision on the underlying question "cannot have any practical effect on the existing controversy." *Richardson v. Phillips*, 302 Ga. App. 305, 311 (2) (690 SE2d 918) (2010) (citation and punctuation omitted). See also *Scarbrough*, 290 Ga. at 236*; Conklin v. Zant*, 263 Ga. 165 (430 SE2d 589) (1993). None of these circumstances exist in the current case, which presents the question of whether the Commission's December 2014 approval of the rezoning and SLUP applications was valid and therefore binding on the County.[7] In light of that fact, we turn to the County's remaining claims of error.

2. The County argues that the trial court erred in granting Red Alligator the declaratory and injunctive relief it requested because the approval of neither the rezoning application nor the SLUP application complied with the Ward Courtesy Rule.

(a) *The Rezoning Application.*

To support its argument that rezoning applications are subject to the Ward Courtesy Rule, the County relies on this Court's decision in *Rock v. Head*, 254 Ga. App. 382. Like the current case, *Rock* involved the grant of a rezoning application.

---

[7] We note that the County's mootness argument assumes that the prior approvals were invalid. In other words, the argument assumes the answers to the very questions presented by this appeal.

Following the approval of that application, the adjoining property owners sued seeking to have the rezoning declared invalid because its approval did not comply with the Ward Courtesy Rule. The trial court granted judgment in favor of the neighbors and this Court affirmed, holding that under the Organizational Act a rezoning application was subject to the Ward Courtesy Rule. Thus, we found that

> *no zoning changes* can be approved without the vote of a commissioner in whose district the property is located. Neither the district commissioner nor the super district commissioner from the district in which [the] property [at issue] is located voted in favor of the rezoning, and the application therefore was not approved.

Id. at 385 (2) (emphasis supplied).

Despite this holding, Red Alligator asserts that as a matter of law, the approval of a rezoning application cannot constitute the "enactment of a zoning ordinance" within the meaning of the Organizational Act, which provides that no planning or zoning ordinance shall become law unless the vote complied with the Ward Courtesy Rule. To support this argument, Red Alligator relies on the definition of "zoning ordinance" found in Georgia's Zoning Procedures Law, OCGA § 36-66-1, et seq. (the "ZPL"). That statute defines a zoning ordinance as

> an ordinance or resolution of a local government establishing procedures and zones or districts within its respective territorial boundaries which

11

regulate the uses and development standards of property within such zones or districts. The term also includes the zoning map adopted in conjunction with a zoning ordinance which shows the zones and districts and zoning classifications of property therein.

OCGA § 36-66-3 (5). The statute further defines a "zoning decision" as a

final legislative action by a local government which results in:
(A) The adoption of a zoning ordinance;
(B) The adoption of an amendment to a zoning ordinance which changes the text of the zoning ordinance;
(C) The adoption of an amendment to a zoning ordinance which rezones property from one zoning classification to another;
(D) The adoption of an amendment to a zoning ordinance by a municipal local government which zones property to be annexed into the municipality; or
(E) The grant of a permit relating to a special use of property.

OCGA § 36-66-3 (4).

Red Alligator contends that in light of these statutory definitions, "the General Assembly intended . . . the terms 'zoning decision' and 'zoning ordinance' [to] have separate meanings"; the term "zoning ordinance" can only refer to "an adopted planning or zoning policy that has a district-wide impact"; and that because the rezoning application at issue would have an impact on only a single parcel of land,

"it does not and cannot constitute a 'zoning ordinance'" within the meaning of the ZPL.

The flaw in Red Alligator's argument is that we are not applying the ZPL. Instead, we are being called on to interpret and apply the DeKalb County Organizational Act. Red Alligator offers no argument, however, as to why the definition of "zoning ordinance" found in the ZPL should control our understanding of that term as it is used in the Organizational Act. And while "there is a natural presumption that identical words used in different parts of the *same* act are intended to have the same meaning," *Zaldivar v. Prickett*, 297 Ga. 589, 592 (1) (774 SE2d 688) (2015) (citation and punctuation omitted, emphasis supplied), no such presumption applies with respect to two different acts of the General Assembly.[8]

To determine whether the Ward Courtesy Rule applies to a rezoning application, we must begin with the plain language of the Organizational Act itself. See *Chan v. Ellis*, 296 Ga. 838, 839 (1) (770 SE2d 851) (2015) ("[a] statute draws its meaning, of course, from its text"). And in interpreting the Organizational Act, we

---

[8] In this regard, we note that the ZPL was passed in 1985, approximately four years after the enactment of the Organizational Act. 1985 Ga. L., p. 1139-1143. Thus, the legislature did not draft the Organizational Act with the ZPL's definition of zoning ordinance in mind.

13

must presume that "the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013). To that end, we afford the text of the act "its plain and ordinary meaning," and we read that text in the "most natural and reasonable way, as an ordinary speaker of the English language would." Id. at 172-173 (1) (a).

As noted above, Section 9 (a) (10) of the Organizational Act grants the Commission the power and authority

> [t]o regulate land use by the adoption of a comprehensive development plan *and* by the adoption of *other planning and zoning ordinances* which relate reasonably to the public health, safety, morality [,] and general welfare of the county and its citizens . . . .

(Emphasis supplied.) Given this plain and unambiguous language, we find that the Ward Courtesy Rule applies to both any comprehensive zoning ordinance or plan adopted by the Commission as well as to the Commission's adoption of all other zoning ordinances. The question, then, is whether the approval of a rezoning application constitutes one of those "other" zoning ordinances. We find that it does.

The term "zoning ordinance" is commonly understood to refer to a local "ordinance that regulates the use to which the land within various parts of the

14

[locality] may be put."[9] Black's Law Dictionary (10th Ed. 2014). And here the record shows that a rezoning application is approved by the adoption of an ordinance that serves to amend the zoning map that is incorporated by reference into the comprehensive zoning ordinance found in the County's Code of Ordinances. DeKalb County Code of Ordinances, ch. 27, art. 1, §1.1.10. In other words, rezoning is a legislative act that results in an amendment to the Zoning Ordinance of DeKalb County. Given that a rezoning application is approved by the enactment of an ordinance that addresses zoning, we find that the approval of such an application results in the adoption of a zoning ordinance.

(b) *The SLUP Application*.

The trial court also relied on the definitions found in the ZPL to conclude that the approval of a SLUP does not involve the adoption of a zoning ordinance. We disagree.

---

[9] We note that this commonly understood definition of "zoning ordinance" would encompass all those legislative acts that the ZPL defines as "zoning decisions." See OCGA § 36-66-3 (4). This fact, in turn, demonstrates that the Organizational Act and the ZPL are consistent with one another. Like the Organizational Act, the ZPL distinguishes between comprehensive zoning ordinances (which the ZPL defines as a "zoning ordinance") and all other zoning ordinances. The only difference is that the ZPL distinguishes comprehensive zoning ordinances from "other" zoning ordinances by categorizing the "other" ordinances as "zoning decisions." Id.

15

Like a rezoning request, the grant of a SLUP is governed by DeKalb County's comprehensive zoning ordinance. See DeKalb County Code of Ordinances, ch. 27, art. 1, § 1.1.10. Specifically, the comprehensive zoning ordinance designates both the permitted uses to which land in a particular zoning district may be put, and also specifies whether such a permitted use requires a SLUP. See id., ch. 27, art. 4, § 4.1.3. Any application for a SLUP is approved by the adoption of an ordinance granting the application. See id., ch. 27, art 7, § 7.4.1, et seq. Thus, as with a rezoning application, the granting of a SLUP is a legislative act authorized by the county's comprehensive zoning ordinance that results in the adoption of an ordinance that addresses zoning. Accordingly, we find that the grant of a SLUP constitutes the adoption of a zoning ordinance within the meaning of the Organizational Act.

(c) In light of our finding that the approval of both Red Alligator's rezoning and SLUP applications constituted the adoption of a zoning ordinance, it follows that both actions were subject to the Ward Courtesy Rule. And by purporting to approve such ordinances without complying with that rule, the Commission exceeded the

16

power granted it by the General Assembly.[10] Georgia law is clear that where a local government acts "with the total absence or want of power" to do so, those acts are ultra vires and are without legal effect. See *Heiskell v. Roberts*, 342 Ga. App. 109, 115 (2) (a) (802 SE2d 385) (2017). See also *City of Baldwin v. Woodard & Curran*, 293 Ga. 19, 26-27 (2) (c) (743 SE2d 381) (2013); *H. G. Brown Family Ltd. Partnership v. City of Villa Rica*, 278 Ga. 819, 820-821 (2) (607 SE2d 883) (2005). Accordingly, the trial court erred when it found that the December 2014 votes to approve both Red Alligator's rezoning application and its SLUP application were valid.

3. The trial court found (and Red Alligator argues on appeal) that even if the Ward Courtesy Rule applies to the rezoning application, the Commission's failure to comply with that rule was irrelevant because once a rezoning has been approved, that approval vests the property owner with certain rights and therefore cannot be

---

[10] The Organizational Act sets forth the Commission's authority to take official action, including its authority with respect to zoning. The act makes clear that the Commission is authorized to adopt a zoning ordinance only if its action complies with the Ward Courtesy Rule. See generally *H. G. Brown Family Ltd. Partnership v. City of Villa Rica*, 278 Ga. 819, 819-821 (1) (607 SE2d 883) (2005) (a local government cannot act outside the powers granted it by the General Assembly).

17

rescinded.[11] As explained in Division 2, however, because the approvals did not satisfy the Ward Courtesy Rule, they were "ultra vires and void." *Brown v. City of East Point*, 246 Ga. 144, 146 (268 SE2d 912) (1980). Given that they were void ab initio, neither of those ordinances could "give birth to a right, and in the absence of such a right, there can be no vesting." Id.

4. In light of our holding that the approval of the SLUP was invalid, we need not address the County's argument that the SLUP impermissibly granted Red Alligator the right to maintain more Class B gaming machines on its property than is allowed under state law.

For the reasons set forth above, we reverse the judgment of the trial court and remand the case for entry of judgment in favor of DeKalb County and its Board of Commissioners.

*Judgment reversed and case remanded. McFadden, P. J., and Bethel, J., concur.*

---

[11] To support this finding, the trial court relied on the Georgia Supreme Court's decisions in *Bowen v. Pendley*, 232 Ga. 446 (207 SE2d 54) (1974) and *City of Atlanta v. East Point Amusement Co.*, 222 Ga. 774 (152 SE2d 374) (1966). Each of those cases held that once a local government properly approves a rezoning application, it cannot thereafter rescind that approval "in the absence of a new petition being filed and all procedures followed as provided by law to again change the zoning of such tract of land." *Bowen*, 232 Ga. at 448. See also *East Point Amusement Co.*, 222 Ga. at 776 (3). Neither of these cases, however, holds that a property owner obtains a vested property right as a result of the grant of a rezoning.