S04A1665. H. G. BROWN FAMILY LIMITED PARTNERSHIP et al. v. CITY OF VILLA RICA et al.

(607 SE2d 883)

SEARS, Presiding Justice.

Appellee City of Villa Rica ("City") negotiated for the purchase of a right-of-way from appellant H. G. Brown Family Limited Partnership ("Partnership"). A nine paragraph contract was drafted to memorialize the resulting agreement. In Paragraph 4 of the contract, the City agreed to reclaim wetlands on property owned by the Partnership and also agreed to employ a wetlands specialist to achieve that goal. The contract was executed on the City's behalf by the mayor and two council members. Those three officers, however, did not constitute a quorum, as defined by the City's charter. Nor was the contract presented to the city attorney for review or to the city council for approval, both of which are required by the City's charter.

Thereafter, the City upheld most of its obligations under the contract, including the payment of all money due to the Partnership. The City, however, failed to perform its obligations under Paragraph 4, regarding the reclamation of wetlands on the Partnership's property. When the Partnership requested voluntary compliance with Paragraph 4, the City argued that the entire contract was ultra vires because it was not properly approved by the city council and was not recorded in the council's official minutes. After determining that its claim for breach of contract was barred by sovereign immunity, the Partnership sought mandamus relief that would compel the City to validate the contract by entering it into the council's official minutes. The superior court denied the mandamus petition, holding that because the contract was ultra vires, it was not legally binding on the City.

1. A municipality has no inherent power; it may only exercise power to the extent it has been delegated authority by the state.[1] A municipality's allocations of power from the state must be strictly

---

[1] Ga. Const. (1983), Art. IX, Sec. II, Par. II; OCGA § 36-34-1 et seq. See *Koehler v. Massell*, 229 Ga. 359, 361-362 (191 SE2d 830) (1972) ("Municipalities are creatures of the legislature. They possess only such powers as are expressly delegated to them by the legislature. They possess no inherent powers.").

construed.[2] Accordingly, we have long recognized that a municipality's ability to enter into contracts is limited.[3] It is established that " '[a] municipal corporation may bind itself by, and cannot abrogate, any contract which it has the right to make under its charter.' "[4] However, if a local government enters a contract in abrogation of its delegated power or in excess of its authority to enter contracts, then the contract is deemed ultra vires and void.[5]

> The exact status of a defective contract . . . depends upon the type of limitation which the local government has ignored in making it. If the contract was imperfectly or irregularly executed, it may not necessarily be completely ineffective, as long as it was the type of contract within the power of the local government to make. But if the limitation ignored was one which placed the contract completely beyond the power or competence of the local government, then the contract will be termed *ultra vires*, and its status is an absolute nullity.[6]

Where a city charter specifically provides how a municipal contract shall be made and executed, the city may only make a contract in the method prescribed; otherwise, "the contract is invalid and unenforceable."[7] A municipality's method of contracting, once prescribed by law or charter, is absolute and exclusive.[8]

In this case, the City's charter, enacted by the General Assembly,[9] sets forth the parameters of the City's authority to take official action, including its ability to enter into contracts. The charter provides that the City's legislative authority is vested in a council composed of a mayor and five council persons;[10] that the Mayor shall sign contracts when authorized by the council to do so;[11] that a quorum authorized to transact business on behalf of the City requires the presence of at

---

[2] *Kemp v. City of Claxton*, 269 Ga. 173, 176 (496 SE2d 712) (1998).

[3] *Precise v. City of Rossville*, 261 Ga. 210, 210-211 (403 SE2d 47) (1991); *Williams v. City Council of West Point*, 68 Ga. 816 (1882). See OCGA § 36-30-3.

[4] *Jonesboro Area Athletic Assn. v. Dickson*, 227 Ga. 513, 520 (181 SE2d 852) (1971), quoting *City of Summerville v. Ga. Power Co.*, 205 Ga. 843, 844 (55 SE2d 540) (1949). See also Sentell, Jr., *Studies in Georgia Local Government Law*, p. 547 (3rd ed. 1977).

[5] *Precise*, 261 Ga. at 211; *CSX Transp. v. City of Garden City*, 277 Ga. 248, 249 (588 SE2d 688) (2003); *Arneson v. Board of Trustees &c. of Ga.*, 257 Ga. 579 (361 SE2d 805) (1987) (any action taken beyond the scope of the powers that have been expressly or impliedly conferred upon a municipality is ultra vires); Sentell, supra at 543.

[6] Sentell, supra at 543.

[7] McQuillin, *Municipal Corporations*, Vol. 10, § 29.21 (1999).

[8] Id.; *Murray County v. Pickering*, 42 Ga. App. 739 (157 SE 343) (1931).

[9] 1975 Ga. Laws, p. 4575.

[10] Charter of the City of Villa Rica, Georgia ("Charter"), § 2.10.

[11] Charter § 2.17.

least three council persons and the Mayor;[12] that no contracts shall bind the City unless approved by the council;[13] and that all contracts must be either drafted by the city attorney or submitted to the city attorney before being authorized by the council.[14]

The undisputed facts, as discussed above, show that the contract between the Partnership and the City was neither drafted by nor submitted to the city attorney before authorization from the council was sought; was not approved by a quorum of the council; and was not authorized by the council before being signed by the Mayor. Moreover, the contract was not considered by the council in conjunction with an open public meeting, as required by the Georgia Code.[15]

> The officer, body, or board duly authorized must act on behalf of the municipality, otherwise a valid contract cannot be created. . . . [T]he governing body . . . must act at a legal meeting and as a board, since the individual members acting singly have no authority to bind the municipality.[16]

It follows that the City entered the contract in derogation of its limited grant of authority; in other words, the City acted "beyond the power or competence of the local government."[17] Therefore, we have no choice but to conclude that the contract is ultra vires, null and void.

2. As the facts set out above demonstrate, this is not a case where the City simply exercised its legitimate powers in an unusual or irregular fashion. Rather, it involves a situation where the City acted with a total absence of power and in direct contradiction to the strictures of its charter.[18] Where, as here, a municipality contracts with a total absence of power, it is not estopped from denying the resulting agreement's validity.[19]

The effect upon the Partnership of this determination is significant, "because, legally, there never was a contract. . . ."[20] Accordingly, the Partnership cannot seek whole or partial performance of the

---

[12] Charter § 2.23.

[13] Charter § 6.40.

[14] Id.

[15] OCGA § 50-14-1 (b) ("Any . . . official action of an agency [which, as defined in the section, includes a municipality] . . . made at a meeting which is not open to the public as required by this chapter shall not be binding.").

[16] McQuillin, *Municipal Corporations*, Vol. 10, § 29.15 (1999).

[17] *Precise*, 261 Ga. at 211.

[18] See *City of Summerville*, 205 Ga. at 846 (discussing distinction between situations where a municipality exercises its power irregularly and where it acts with an absence of power).

[19] Id.

[20] Sentell, supra at 544. See *CSX Transp.*, 277 Ga. at 250 (city was not authorized by the legislature to enter an indemnification agreement with corporation; therefore, the agreement had "no effect" on the question of whether the city waived sovereign immunity).

contract through mandamus or other means,[21] and the City's substantial performance under the contract will not be treated as a ratification thereof.[22] Furthermore, as noted, the City is not estopped from asserting the contract's invalidity, even though the Partnership has performed its part of the bargain and might even have relied upon the contract to its detriment.[23]

While this conclusion may, at first blush, appear unfair, there are compelling policy concerns that support it. The limitations placed on the City's ability to contract include numerous checks that are designed to prevent improper action by the City, which could have disastrous consequences for taxpayers.

> To allow the [ultra vires] agreement to appear effective in any sense, even quasi-contractually . . . would amount to permitting the local government to expand its own powers rather than requiring it to rely upon state legislative delegation. Indeed, this would annul the limitation itself and sanction the local government's accomplishing indirectly that which it could not directly achieve. From this . . . it would be but a short step to governmental extravagance with resulting unreasonable risks and liabilities being heaped upon the shoulders of local taxpayers. A strict rule of absolute nullity, therefore, will nip these dangerous tendencies at the outset and, viewed in this light, is "consistent with principles of equity and fair dealing."[24]

Accordingly, because the City acted without any power, we conclude the trial court did not abuse its discretion in denying

---

[21] See *Douglas v. Austin-Western Road Machinery Co.*, 173 Ga. 834, 838 (161 SE 811) (1931) (in an action seeking mandamus relief to compel a county to enter a contract in its official minutes, no relief is available where the contract is facially invalid).

[22] Sentell, supra at 544; McQuillin, supra at § 29.10, p. 285.

[23] *City of Summerville v. Ga. Power Co.*, supra at 846 (a municipality is not estopped to deny the validity of a contract wholly beyond its powers); Sentell, supra at 544; McQuillin, supra at § 29.10, p. 285. The precedent cited by the Partnership does not require a contrary result. *Malcom v. Fulton County*, 209 Ga. 392 (73 SE2d 173) (1952), concerned a contract that was drafted by a county attorney, presented at an open meeting, and accepted by a majority vote of the council. *Jones v. Graham*, 192 Ga. 383 (15 SE2d 420) (1941), involved a contract accepted by a majority council vote and entered in the official minutes. *City of Abbeville v. Eureka Fire Hose Mfg. Co.*, 177 Ga. 204 (170 SE 23) (1933) addressed recovery on warrants issued by the city as payment for purchased goods. Finally, *Wagener v. Forsyth County*, 135 Ga. 162 (68 SE 1115) (1910) involved a valid contract that was agreed to by a majority of council members at an open meeting, voted on, and executed. Hence, none of these cases involve a facially invalid contract entered into in violation of the powers delegated by the legislature and set forth in an official charter.

[24] Sentell, supra at 545.

mandamus relief that would have compelled the City to enter the contract in its official minutes, thereby validating it.

3. Having reviewed the trial court's order, we do not believe (1) that the court found that the *subject matter* of the contract was outside the scope of the City's power to contract, or (2) that the court found that by its actions, the City improperly bound future councils. Therefore, we reject the Partnership's contrary arguments.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 10, 2005.

*Hartley, Rowe & Fowler, Joseph H. Fowler,* for appellants.
*Tisinger, Tisinger, Vance & Greer, Charles D. Mecklin, Jr., Mullins, Whalen & Westbury, Andrew J. Whalen III, Virginia S. Martin,* for appellees.