**THIRD DIVISION
ELLINGTON, P. J.,
ANDREWS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 7, 2017**

# In the Court of Appeals of Georgia

A17A0520.   THE   CITY   OF   ATLANTA   v.   HOGAN
          CONSTRUCTION GROUP, LLC

RICKMAN, Judge.

Hogan Construction Group, LLC ("Hogan") sued the City of Atlanta (the "City") for breach of contract and violation of Georgia's Prompt Pay Act, alleging that the City failed to pay all amounts due for services provided on a construction project. The City sought summary judgment on both claims, and the trial court denied the motion. Following the grant of its application for interlocutory appeal, the City appeals, contending that the trial court erred by denying its motion for summary judgment on Hogan's breach of contract claim because the requirements of City of Atlanta Code of Ordinances § 2-1292 (b) were not met and on Hogan's Prompt Pay

Act claim because the claim was waived. For reasons that follow, we affirm in part and reverse in part.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "We review the grant or denial of a motion for summary judgment de novo, and we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." (Citation and punctuation omitted.) *Courtland Hotel, LLC v. Salzer*, 330 Ga. App. 264 (767 SE2d 750) (2014).

So viewed, the evidence showed that in June 2011, the Atlanta City Council (the "City Council") approved legislation authorizing the City of Atlanta Mayor (the "Mayor") to enter into a contractual agreement with Hogan for the construction of Fire Station 28 in an amount not to exceed $3,017,000. On November 15, 2011, the City and Hogan entered into a Contractor Agreement for the construction of Fire Station 28. The agreement documents included, inter alia, the agreement between the City and Hogan, General Conditions, Legislation, and any modifications, which collectively formed the Agreement. In September 2012, the City Council authorized

2

the Mayor to execute an amendment to the Agreement for additional funding in an amount not to exceed $181,525. The total "not to exceed amount" authorized for construction of Fire Station 28 was $3,198,525.

Hogan began work on the fire station project in "winter 2011." A stop work order was issued when a state waterway was discovered on the project site, which resulted in delays at the project and required the relocation of the retention pond. Hogan submitted change order proposal 16 for general condition costs associated with the delay. The discovery of a Georgia Power transmission pole in the middle of the driveway where the fire trucks were to exit necessitated the relocation of the building, and the relocation resulted in a need for additional soil testing. Hogan submitted change order proposal 57 for additional third party soil testing resulting from "revisions to the civil site plan and the relocation of the building." Hogan submitted change order proposal 58 for work done to remediate unsuitable soils at the building site, which were discovered during the additional third party testing.

The City paid $3,506,805.02 to Hogan for construction of Fire Station 28. In its complaint, Hogan sought payment of an additional $90,063.66, which included $68,397 for change orders 16, 57, and 58, as well as charges in the amount of $21,666.66 for millwork, cabinet work, electrical work, and signage that Hogan

3

asserts were included in the original scope of work. The City denied liability for the amounts sought by Hogan.

In its motion for summary judgment, the City argued that it was not obligated to pay the amounts sought by Hogan because the City Council and the Mayor had not approved any contract modifications or change orders that exceeded the "not to exceed" amount authorized for the project by more than ten percent. To support this argument, the City relied upon City of Atlanta Code of Ordinances § 2-1292 (b), which provides:

> *Modifications exceeding ten percent.* When the cumulative dollar amount for all contract modifications and change orders exceeds ten percent of the total "not to exceed" cost authorized for the contract, all subsequent contract modifications or change orders that involve additional cost to the city shall be approved by the city council and mayor.

The City further argued that the parties waived the applicability of the Prompt Pay Act to the Agreement. The trial court denied the City's motion in its entirety, ruling that "the fact that the City Council and Mayor have not yet approved payments exceeding the 'not to exceed' amount does not excuse the City from payment as a matter of law." Although the trial court did not specifically mention the Prompt Pay

Act claim, it ruled that the case "shall proceed to trial on all of the counts enumerated in Hogan's complaint."

1. The City contends that the trial court erred by denying its motion for summary judgment on Hogan's breach of contract claim because the amounts sought were not approved as required by City of Atlanta Code of Ordinances § 2-1292 (b). The City argues that the failure to obtain the necessary approval entitles it to summary judgment on Hogan's breach of contract claim in its entirety "or at the very least, in part."

Initially, the City focuses on the limitations imposed on a municipality's ability to enter contracts, specifically that "[w]here a city charter specifically provides how a municipal contract shall be made and executed, the city may only make a contract in the method prescribed" and "if a local government enters a contract in abrogation of its delegated power or in excess of its authority to enter contracts, then the contract is deemed *ultra vires* and void." *H. G. Brown Family Ltd. Partnership v. City of Villa Rica*, 278 Ga. 819, 820 (1) (607 SE2d 883) (2005); see also *City of Baldwin v. Woodard & Curran, Inc.*, 293 Ga. 19, 27-28 (2) (c) (743 SE2d 381) (2013) (where proposal was not approved by the city council as required by the city charter, it was

5

ultra vires and void). As the City acknowledges, however, this is not a case about the City's authority to enter the Agreement or the validity of the Agreement. The City of Atlanta Charter gives the City the authority to "contract and be contracted with," Ga. L. 1996, p. 4471, § 1-102 (a), and provides that all "contracts shall be approved as to form by the city attorney" and signed by the mayor or someone designated by the mayor. Ga. L. 1996, p. 4543, § 6-401 (a). Here, the City Council authorized the Mayor to enter into a contractual agreement with Hogan for the construction of Fire Station 28 and an amendment to that agreement. The Agreement was approved as to form by the City Attorney, approved by the Chief Procurement Officer, and signed by the Mayor. Thus, the Agreement was not entered by the City "in abrogation of its delegated power or in excess of its authority to enter contracts." *H. G. Brown Family Ltd. Partnership*, 278 Ga. at 820 (1).

Next, the City argues that the language and purpose of § 2-1292 (b) demonstrate that the City is not obligated to pay the amounts sought by Hogan.

> The principles that guide our consideration of the meaning of statutes are settled ones, and we apply those same principles when we consider the meaning of an ordinance. As such, we look first to the text of the ordinance, and if the text is clear and unambiguous, we look no further, attributing to the ordinance its plain meaning. As we look to the words of the ordinance, we attribute to those words their ordinary,

6

logical, and common meanings, unless a clear indication of some other meaning appears. And we read the ordinance as a whole according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending its operation.

(Citations and punctuation omitted.) *Daniel Corp. v. Reed*, 291 Ga. 596, 597 (732 SE2d 61) (2012).

The language of the ordinance is clear and unambiguous with respect to the threshold amount requiring approval of the City Council and Mayor. It is undisputed that the City paid Hogan $308,280.02 over the "not to exceed" cost of the Agreement, which is $11,572.48 less than ten percent of the total "not to exceed" cost. Thus, at least as to the $11,572.48 that falls below the ten percent threshold, the provisions of § 2-1292 (b) would not apply.[1]

With respect to the remaining amounts, the City contends that it has no liability because those amounts have not been approved. The City is correct that the language

---

[1] In addition to the amounts below the ten percent threshold, Hogan contends that the ordinance does not apply to $21,666.66 of the amounts sought because they were included in the original scope of work and are not contract modifications or change orders. We agree that § 2-1292 (b) only applies to additional costs associated with "contract modifications or change orders," but take no position on whether these particular amounts are otherwise recoverable.

of the ordinance clearly states that the City Council and the Mayor must approve any contract modifications and change orders that exceed ten percent of the total "not to exceed" cost authorized for the contract. But as noted by the trial court, the ordinance does not state when the approval must take place. And we cannot add such a provision to the ordinance. See *Great West Cas. Co. v. Bloomfield*, 303 Ga. App. 26, 29 (2) (693 SE2d 99) (2010) (court's duty is neither to add to nor to take away from laws that are passed, but to apply them as written). Although we take no position on whether the amounts sought by Hogan should be approved, the plain language of § 2-1292 (b) does not relieve the City of any obligation to pay Hogan these amounts solely because they were not approved prior to the work being performed,[2] or, as the City suggests, at the precise moment when the costs exceeded the ten percent threshold.

The City also contends that it had no duty to seek approval of the amounts sought by Hogan. The Agreement does not address how approval from the City

_____

[2] We note that as a practical matter, it would have been impossible for Hogan to comply with the terms of the Agreement and to obtain prior approval of its change order proposals because the Agreement required Hogan to continue working regardless of any disputes or disagreements with the City about change orders or other matters.

Council and Mayor was to be obtained for amounts in excess of ten percent of the contract price, but here, one of the City's project managers for this project deposed that he told Hogan that he would present its claims to the City Council if he was convinced that the amounts were legitimately due. Furthermore, "[i]n Georgia, every contract imposes upon each party a duty of good faith and fair dealing in the performance of their respective duties and obligations. This implied duty requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's performance." (Citations and punctuation omitted.) *U. S. Lawns, Inc. v. Cutting Edge Landscaping, LLC*, 311 Ga. App. 674, 678 (1) (716 SE2d 779) (2011). Under the terms of the Agreement, the City had an express duty to consider any claims properly submitted by Hogan in a timely manner, to issue a written determination, "and if it deems appropriate accept such parts of the claim as they find in good faith to be proper." The record does not show that the City ever issued a written determination as to the claims at issue or that the City ever sought approval of those claims from the City Council and Mayor. Whether the City exercised good faith in the performance of the Agreement and the consideration of Hogan's claims is a factual question for the jury to resolve. See *Capital Health Mgmt. Group, Inc. v. Hartley*, 301 Ga. App. 812, 817-18 (1) (689 SE2d 107) (2009). We

9

conclude that the trial court did not err in denying the City's motion for summary judgment on Hogan's breach of contract claim and therefore affirm that ruling.

2. The City contends that the trial court erred by denying its motion for summary judgment on Hogan's claims under the Georgia Prompt Pay Act because the claims were waived in the Agreement.

The Georgia Prompt Pay Act sets forth time limits for payments to contractors and provides for interest on late payments and attorney fees to the prevailing party in an action to enforce a claim under the Act. OCGA §§ 13-11-4, 13-11-7 (a), 13-11-8. The Act also provides that "[n]othing in this chapter shall prohibit owners, contractors, and subcontractors from agreeing by contract to rates of interest, payment periods, and contract and subcontract terms different from those stipulated in this Code section, and in this event, these contractual provisions shall control." OCGA § 13-11-7 (b).

The Agreement includes a provision addressing when progress payments will be paid and a provision for the payment of interest based on the prime rate for failure to issue progress payments within 60 days of approval. General Condition 38.4 (J) addresses the basis for the prime rate and specifically states that "[t]his clause shall supersede the Georgia Prompt Pay Act and any modifications or successors to it."

10

These contractual provisions would control any claim for timely payment or interest that Hogan has asserted and the Prompt Pay Act would not apply to those claims. Accordingly, we reverse the denial of summary judgment to the City on Hogan's claims for prompt payment and interest under the Prompt Pay Act. See OCGA § 13-11-7 (b); see generally *Pipe Sols., Inc. v. Inglis*, 291 Ga. App. 328, 331 (2) (661 SE2d 683) (2008) (where Prompt Pay Act clearly provides that it is inapplicable to certain claims, court should follow plain language of statute).

The Agreement does not, however, address attorney fees and would not bar any valid claim for attorney fees under the Prompt Pay Act.[3] We therefore affirm the denial of the City's motion for summary judgment as to Hogan's claim for attorney fees under the Prompt Pay Act.

*Judgment affirmed in part and reversed in part. Ellington, P. J., and Andrews, J., concur.*

---

[3] Contrary to the City's argument, General Condition 38.4 (J) only applies to interest.